**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nouveau Riche Corporation, a Nevada corporation authorized to conduct business in Arizona,<br><br>             Plaintiff,<br><br>vs.<br><br>Cherianne Tree and John Doe Tree, California residents; MONOPOLY CONCEPTS, INC., a Utah corporation; Kecia Wimmer and John Doe Wimmer, California residents,<br><br>             Defendants. | No. CV 08-1627-PHX-JAT<br><br>**ORDER** |

The Court has reviewed the Application for Temporary Restraining Order and Preliminary Injunction (Doc. # 8) filed by Plaintiff Nouveau Riche Corporation ("Nouveau Riche") against Defendants Cherianne Tree ("Ms. Tree"), Monopoly Concepts, Inc. ("Monopoly Concepts"), and Kecia Wimmer ("Ms. Wimmer") (collectively "Defendants"). The Court also has reviewed Defendants' Opposition to Plaintiff's Request for Injunctive Relief (Doc. #7), Plaintiff's Reply (Doc. # 20) in support of its Application, and the supporting documents filed herewith. On November 18, 2008, the Court heard evidence from both parties on the Application for Preliminary Injunction. Upon consideration of the above, the Court finds the following:

## I. **FINDINGS OF FACT**

1. Plaintiff Nouveau Riche Corporation is a Nevada corporation authorized to conduct business, and doing business, in Arizona and residing in Maricopa County, Arizona.

2. Defendant Cherianne Tree is a California resident.

3. Defendant Monopoly Concepts is a Utah corporation authorized to conduct business, and doing business in, California and residing in California.

4. Ms. Tree is the sole shareholder and director of Monopoly Concepts.

5. Defendant Kecia Wimmer is a California resident.

6. Nouveau Riche employs, and sells products and services through, three levels of advisors: Independent Student Advisors ("ISA"), Independent Regional Advisors ("IRA"), and Independent National Senior Advisors ("INSA").

7. On behalf of herself and her company, Monopoly Concepts, Defendant Cherianne Tree signed an Independent National Senior Advisor Independent Contractor Agreement ("INSA Agreement") in January 2008.

8. The INSA Agreement signed by Ms. Tree contains restrictive covenants, including Confidentiality, Non-Compete, and Non-Solicitation provisions.

9. The Confidentiality provision of the INSA Agreement provides:

> **Confidentiality.** The INSA recognizes that the Company will disclose to the INSA confidential information including business plans, marketing plans, operational information, client and potential client information, and information regarding sales and products costs (collectively, "Confidential Information"). The Company's Confidential Information is a valuable, special and unique asset of the Company and needs to be protected from improper disclosure. In consideration for the disclosure of the Confidential Information to the INSA, the INSA agrees that the INSA will not at any time or in any manner, either directly or indirectly, use any Confidential Information for the INSA's own benefit, or divulge, disclose, or communicate in any manner any Confidential Information to any third Party without the prior written consent of the Company. The INSA will protect the Company's Confidential Information and treat it as strictly confidential. A violation of this paragraph is a material violation of this Agreement and may be grounds for termination.
>
> **Unauthorized Disclosure of Information.** If it appears that the INSA has disclosed (or has threatened to disclose) Confidential Information in violation of this Agreement, the Company shall be entitled to an injunction to restrain the INSA and or the INSA's employees or agents

from disclosing, in whole or in part, such Confidential Information, or from providing any goods or services to any Party to whom such Confidential Information has been disclosed or may be disclosed.

**Confidentiality After Termination.** The confidentiality provisions of this Agreement shall remain in full force and effect after the termination of this Agreement.

10.  The Non-Compete provision of the INSA Agreement provides:

**Non-Compete Agreement.**   Recognizing that the Company's Confidential Information is special and unique asset of the Company that needs to be protected from disclosure to the public, and in consideration of the disclosure of the Confidential Information to the INSA and the fees paid pursuant to this Agreement, the INSA agrees that for a period of one year following the termination of this Agreement, whether such termination is voluntary or involuntary, the INSA will not directly or indirectly engage in any business competitive with the Company.  This covenant shall apply to the geographical area that includes all states in which the Company does at least 10% of the Company's business.  Sales will be deemed to take place in the state in which the buyer resides.   Directly or indirectly engaging in any competitive business includes, but is not limited to: (I) engaging in a competitive business as owner, partner, or agent; (ii) becoming an employee of any third party that is engaged in such business; or (iii) becoming interested directly or indirectly in any such business; or (iv) soliciting any customer of the Company for the benefit of a third party that is engaged in such business.   The INSA agrees that this non-compete provision will not adversely affect the livelihood of the INSA.

11.  The INSA Agreement also contains non-solicitation language:

Additionally, during the term of this Agreement and for a period of one year following the termination of this Agreement, INSA shall not solicit or employ or contract with any Company employee or independent contractor (including, but not limited to, the Company's Independent Regional Advisors and or the Company's Independent Student Advisors) to market or sell any of the INSA'S products or services or any other products or services.

12. Exhibit A to Ms. Tree's INSA Agreement defined the territory in which Ms. Tree was to direct her sales and marketing activity for Plaintiff as Hawaii, Colorado, Wyoming, Nebraska, Indiana, and Southern Michigan.

13. At various times prior to the 2008 Agreement, Ms. Tree's sales and marketing territory had involved Utah and California.

1    14.  At no time in her dealings with Nouveau Riche did Ms. Tree's sales and
2 marketing territory ever include Idaho or Illinois.

3    15.  Defendant Kecia Wimmer signed an Independent Student Advisor Agreement
4 ("ISA Agreement") in January 2008.

5    16.  The ISA Agreement contains restrictive covenants, including Confidentiality,
6 Non-Compete, and Non-Solicitation provisions.

7    17.  The Confidentiality provision of the ISA Agreement provides:

> **Confidential Information.**  You recognize that the Company will disclose to You Confidential Information, including but not limited to client lists, lists of potential clients or leads, client and potential client information, contact lists, business plans, marketing plans, operational information, information regarding sales and product costs, and marketing materials. Confidential Information includes materials that are developed or modified during the course of this Agreement either by You or by You working in conjunction with the Company. All Confidential Information, including but not limited to materials You participated in developing or modifying, is the sole and exclusive property of the Company. You agree that You will not at any time or in any manner, either directly or indirectly, use any Confidential Information for your own benefit, or divulge, disclose, or communicate in any manner any Confidential Information to any third party. Upon termination of this Agreement, You shall immediately deliver to the Company all documents or recorded materials that contain or refer to Confidential Information, (as well as Company equipment and or records) that are in your custody or control. The confidentiality provisions of this Agreement shall remain in full force and effect after the termination of this Agreement. .

19    18.  The Non-Compete provision of the ISA Agreement provides:

> **Non-Compete.**  You agree that for the term of this Agreement and for a period of one year following the termination of this Agreement, You will not directly or indirectly engage in any business competitive with the Company. You will not sell real estate Investment education or real estate clubs or memberships. Additionally, You will not market or sell any product or service (other than Company products and services) to any Nouveau Riche™ students, ISAs or Nouveau Riche™ community members without the Company's prior written permission.  This covenant shall apply to the geographical area that includes all states in which the Company does at least 10% of the Company's business. Sales will be deemed to take place in the state in which the buyer resides. Directly or indirectly engaging in any competitive business includes, but is not limited to: (I) engaging in a competitive business as owner, partner, or agent; (ii) becoming an employee or independent contractor of any third party that is engaged in such businesses; (iii) soliciting any customer of the Company for the benefit of a third party

that is engaged in such business; or (iv) direct or indirect sales of competing products, seminars, education, or services.

19. The Non-Solicitation provision of the ISA Agreement provides:

**Non-Solicitation.** Also, during the term of this Agreement and for a period of one year following the termination of this Agreement, You shall not solicit or employ or contract with any Company employee or Independent Contractor (including, but not limited to, the Company's Independent Student Advisors, Independent Regional Advisors, and or Independent National Senior Advisors) to market or sell any other products or services or to join or participate in any club or organization.

20. Plaintiff's Application for a Preliminary Injunction asserts that the Non-Competition provision in the INSA and ISA Agreements at issue, which applies only to those states in which the Company does at least 10% of its business, restricts Defendants Tree and Wimmer from competing in California, Idaho, Illinois, and Utah.

21. On August 7, 2008, Ms. Tree and Ms. Wimmer resigned from Nouveau Riche in order to begin working for a new company called Quattro Corporation.

22. Nouveau Riche has replaced Ms. Tree, and her replacement has been effective in the position.

23. Nouveau Riche's students and independent contractors number in the thousands, work in multiple different states, and many are unknown to one another.

24. The Court finds that the alleged confidential information at issue in this case, specifically the information regarding Nouveau Riche's S.E.E.K. (Super Entrepreneurial Encyclopedia of Knowledge) Program, is widely known and/or available to the public and is therefore no longer confidential.

**II.    CONCLUSIONS OF LAW**

1. Plaintiff Nouveau Riche and Defendants Tree, Wimmer, and Monopoly Concepts are citizens of different states and the value of the injunctive relief sought exceeds $75,000; jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

2. Venue is proper pursuant to 28 U.S.C. § 1391.

3. To obtain injunctive relief, Nouveau Riche has the burden of proving "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005)(citation omitted). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original, citation omitted).

4. The moving party may meet this burden by showing either: (1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *See Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id*. (internal quotations and citation omitted).

5. "There are two types of restrictive covenants: covenants not to compete and anti-piracy, or 'hands off,' agreements. A covenant not to compete precludes former employees from working in the same business as the employers for certain time periods in specified areas." *Hilb, Rogal & Hamilton Co., v. McKinney*, 190 Ariz. 213, 946 P.2d 464 (App. 1997), citing *Bryceland v. Northey*, 160 Ariz. 213, 772 P.2d 36 (App. 1989) and *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 514, 724 P.2d 596, 600 (App. 1986).

6. Covenants not to compete are disfavored because they restrain trade, and thus are strictly construed against employers. *See Bryceland*, 160 Ariz. at 216, 772 P.2d at 39; *Amex Distrib. Co. v. Mascari*, 150 Ariz. at 514, 724 P.2d at 600.

7. A restrictive covenant – whether a covenant not to compete or an anti-piracy agreement – is enforceable as long as it is no broader than necessary to protect the employer's legitimate business interest. *See Bryceland*, 160 Ariz. at 216, 772 P.2d at 39; *Amex Distrib. Co.*, 150 Ariz. at 514, 724 P.2d at 601.

8. Under Arizona law, which applies to both Cherianne Tree's INSA Agreement and Kecia Wimmer's ISA Agreement, a post-employment restriction is unreasonable and will not be enforced (1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public. *See Valley Med. Specialists v. Farber*, 194 Ariz. 363, 369, 982 P.2d 1277, 1283 (1999)(citation omitted).

9. Although the ultimate question of reasonableness is a question of law, reasonableness is a fact-intensive inquiry that depends on weighing the totality of the circumstances. *See Farber*, 194 Ariz. at 366-367, 982 P.2d 1280-1281 (citation omitted).

10. Under Arizona law, restrictive covenants cannot be used to prevent competition per se. Rather, a restriction is valid only if it protects "some legitimate interest [of the employer] beyond the employer's desire to protect itself from competition." *See Farber*, 194 Ariz. at 367, 982 P.2d at 1281 (citations omitted).

11. A restraint's scope is defined by its duration and geographic area. *See Farber*, 194 Ariz. at 370, 982 P.2d at 1284.

12. The activity prohibited by the restraint also defines the covenant's scope, and the restraint must be limited to the particular specialty of the present employment. *See Farber*, 194 Ariz. at 371, 982 P.2d at 1285.

13. "When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers." *Amex Distrib. Co*, 150 Ariz. at 518, 724 P.2d at 604 (citation omitted).

14. With respect to customers, employees, and independent contractors, a non-solicitation restriction may only protect against solicitation of those individuals with whom the Defendants have formed a meaningful relationship. *See Olliver/Pilcher Ins. v.*

*Daniels*, 148 Ariz. 530, 532, 715 P.2d 1218, 1220 (1986). *See also Amex Distrib. Co*, 150 Ariz. at 517-18, 724 P.2d at 603-04.

15. The geographic scope of a restrictive covenant must be reasonably necessary to protect the employer's business and may not unreasonably restrict the right of the employee to work in his chose occupation. *See Olliver/Pilcher Ins. v. Daniels*, 148 Ariz. 530, 532, 715 P.2d 1218, 1220 (1986).

16. The subject matter of protectable confidential information must be secret and be of such a character that it would not occur to persons in the trade with the knowledge of the state of the art. Moreover, matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. *See Wright v. Palmer*, 464 P.2d 363, 366 (Ariz. App. 1970) (citations omitted).

17. Arizona follows the "blue-pencil" rule, which prohibits courts from rewriting restrictive covenants. Although a court may "blue-pencil" and eliminate grammatically severable, unreasonable provisions, "the court cannot create a new agreement for the parties to uphold the contract." *Farber*, 194 Ariz. at 372, 982 P.2d at 1286, quoting *Olliver/Pilcher*, 148 Ariz. at 533, 715 P.2d at 1221.

18. Assuming without deciding that the restrictive covenants as drafted were unenforceable, the provisions at issue here could not be saved by blue-penciling.

19. As to the enforcement of the Non-Compete provision of the INSA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the INSA Agreement is reasonable in geographical scope.

20. As to the enforcement of the Non-Compete provision of the ISA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the ISA Agreement is reasonable in geographical scope.

21.  As to the enforcement of the Non-Compete provision of the INSA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the INSA Agreement is reasonable in geographical scope given its vague and indefinite restriction of competition in states in which Plaintiff does 10% of its business.

22.  As to the enforcement of the Non-Compete provision of the ISA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the ISA Agreement is reasonable in geographical scope given its vague and indefinite restriction of competition in states in which Plaintiff does 10% of its business.

23.  As to the enforcement of the Non-Compete provision of the INSA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the INSA Agreement is reasonable in the scope of the activities it prohibits.

24.  As to the enforcement of the Non-Compete provision of the ISA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the ISA Agreement is reasonable in the scope of the activities it prohibits.

25.  As to the enforcement of the Non-Compete provision of the INSA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the INSA Agreement is reasonable in its duration.

26.  As to the enforcement of the Non-Compete provision of the ISA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Compete provision of the ISA Agreement is reasonable in its duration.

27. As to the enforcement of the Non-Solicitation portion of the INSA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Solicitation portion of the INSA Agreement is reasonable and enforceable.

28. As to the enforcement of the Non-Solicitation provision of the ISA Agreement, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Non-Solicitation provision of the ISA Agreement is reasonable and enforceable.

29. As to the enforcement of the Confidentiality provisions of the INSA and ISA Agreements, Plaintiff, on this record, has failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the Defendants have acquired, used, or disclosed confidential or proprietary information.

30. As to the enforcement of the restrictive covenants, Plaintiff, on this record, has failed to establish the existence of a serious question going to the merits.

31. Where a plaintiff in seeking a preliminary injunction fails to sustain his burden of showing a likelihood of success on the merits, the court need not consider the issue of irreparable injury. *See Germon v. The Times Mirror Co.*, 520 F.2d 786, 788 (9th Cir. 1975).

## III.   ANALYSIS

Based upon the foregoing findings of fact and conclusions of law, this Court finds that Nouveau Riche has failed to demonstrate a substantial likelihood of success on the merits of its claims. Specifically, Nouveau Riche has failed to establish the likelihood that the restrictive covenants in the INSA and ISA Agreements signed by Defendants Tree and Wimmer are enforceable in: (1) geographic scope, (2) scope of the activity prohibited, or (3) duration.

1    First, this Court finds that Plaintiff has failed to establish the likelihood that the Non-Compete portions of the Agreements are reasonable and enforceable with respect to their geographic scope. The specific provisions at issue attempt to restrict Defendants from working in four states – California, Idaho, Illinois, and Utah. Based on the undisputed evidence on this record, however, it is clear that Defendant Tree never performed any work or maintained any business contacts in two of those states – Illinois or Idaho – and that her sales and marketing territory did not include either California or Utah during the performance of her 2008 INSA Agreement.[1] This Court finds that the restriction as drafted is likely to be deemed overly broad and therefore is unlikely to be enforceable. *See, e.g.*, *Olliver/Pilcher Ins.*, 148 Ariz. at 532, 715 P.2d at 1220 (1986) (finding that a non-compete restriction that was statewide in scope was unreasonable where the employee worked in only one part of that state). Such a restriction appears not to prevent Defendants from competing where they worked and maintained customer relationships but in areas where the Company's business is most successful. Restrictive covenants, however, may not be used to restrict trade and prohibit competition per se but can be used only to protect an employer's legitimate interests. *See Farber*, 194 Ariz. at 367, 982 P.2d at 1281.

Moreover, the Non-Compete portion of the restrictive covenant at issue purports to prohibit competition in any state in which the Company does at least 10% of its business. Importantly, the provision does not specify which states that this includes nor does it define the particular point in time that this 10% is to be measured in order to determine the restricted areas. Such an indefinite restriction is not only likely to be overly broad to the extent it restricts individuals from working in areas where they had no previous contact, it is an unfairly amorphous and potentially inconstant standard that may be

---

[1] The Court does not and need not reach a finding as to the territory within which Ms. Wimmer performed sales functions or other work for Nouveau Riche as the Court finds that Ms. Wimmer's Non-Compete is not likely to be enforceable for the additional reasons stated herein.

- 11 -

unknown even to those it purports to restrict.  Again, such a restriction smacks of prohibiting competition per se, and this Court cannot conclude that such a restriction is likely to be determined reasonable and enforceable.

With respect to the activities prohibited by the Non-Compete, Nouveau Riche seeks to enforce restrictions that prohibit Ms. Tree and Ms. Wimmer from marketing or selling any product or service in competition with them rather than limiting the restriction to those products or services with which Defendants were involved at Nouveau Riche. Specifically, Ms. Tree's Agreement prohibits her from engaging in any business competitive with Plaintiff and even goes so far as to prohibit her from "becoming interested directly or indirectly in any such business."  Ms. Wimmer's agreement prohibits her from marketing or selling "any product or service" to any Nouveau Riche student, ISA, or Nouveau Riche community member – even if it is completely unrelated to any product or service Ms. Wimmer dealt with at Nouveau Riche or any product or service offered by Nouveau Riche at all.  Given such language, this Court finds that Plaintiff is not likely to establish that its restriction was narrowly tailored to protect "some legitimate interest beyond the employer's desire to protect itself from competition."[2] *Farber*, 194 Ariz. at 367, 982 P.2d at 1281.

As to the duration of the restriction, this Court also concludes that such a restriction is likely to be deemed unreasonable.  Based on the record before this Court, it is undisputed that Ms. Tree has already been replaced and that her replacement is working effectively for Nouveau Riche.  Given that Ms. Tree resigned from her employment approximately four months ago – in August 2008, such a fact demonstrates that Nouveau Riche was able to replace Ms. Tree and that her replacement has become effective in less than five months time.  Based on the foregoing, this Court cannot conclude that a one

---

[2] Given the Court's finding that the Non-Compete provisions are likely to be overly broad with respect to the scope of the activities prohibited, the Court does not and need not reach a finding as to whether the services provided by Quattro Corporation are competitive with Nouveau Riche.

- 12 -

year restriction is likely to be considered reasonable and enforceable.[3] As stated in *Amex Distrib. Co*, "When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers." 150 Ariz. at 518, 724 P.2d at 604 (citation omitted).

Both the INSA and ISA Agreements also contain Non-Solicitation language separate from the Non-Compete provision. Such language does not apply to the solicitation of Nouveau Riche customers but to the solicitation of its employees and independent contractors.[4] Given the fact that these individuals number in the thousands, work in multiple different states, and are often unknown to one another, Plaintiff is not likely to establish a protectable business interest in restricting Defendants from soliciting them as a whole. Indeed, based on Ms. Tree's testimony, which this Court finds credible, Nouveau Riche has thousands of ISA's working for them -- many if not most of whom Ms. Tree has never met or had contact. Furthermore, the prohibition on solicitation as drafted seeks to restrict Defendants from soliciting these individuals to join any club or organization – even those of a recreational or non-business nature such as a book club. Though the Court does not reach a decision as to whether Ms. Tree and/or Ms. Wimmer actually solicited any employees or independent contractors of Nouveau Riche, the Court finds the restriction unlikely to be reasonable and enforceable in any event. Plaintiff,

---

[3] Given Ms. Wimmer's less senior ISA status, it would not be reasonable to conclude that her replacement would require any more time than that to demonstrate his or her effectiveness to Nouveau Riche's customers.

[4] The solicitation of customers is prohibited in the Non-Compete portion of Defendants' Agreements. This particular solicitation language, which amounts to an anti-piracy agreement, is contained in and inextricably intertwined with the Agreement's Non-Compete provision and, thus, is not likely to be found enforceable for the reasons discussed *supra*.

- 13 -

therefore, has again failed to demonstrate the substantial likelihood of success on the merits needed to obtain the requested injunctive relief.

Finally, to the extent Plaintiff seeks an injunction prohibiting Defendants from disclosing confidential information, this Court finds that Plaintiff is unlikely to establish a breach of the Agreements' Confidentiality provisions. Importantly, nowhere in the record has Plaintiff identified with any specificity what information has been accessible to or misappropriated or disclosed by Defendants. Indeed, the testimony at the November 18 hearing reflects that Plaintiff has failed to offer evidence identifying the specific confidential information at issue in this matter, specifically information regarding Plaintiff's SEEK project. Moreover, the evidence on this record makes clear that such information, even if confidential at one time, is now publicly available. Given the foregoing, the Court concludes that Plaintiff has not demonstrated the likelihood of success on this claim needed in order to enjoin Defendants.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek*, 520 U.S. at 972 (1997) (emphasis in original). Given the above, this Court concludes that Plaintiff has failed to carry the burden needed for relief. Specifically, Plaintiff has, on this record, failed to establish the likelihood of success on the merits because Plaintiff has failed to establish the likelihood that the restrictive covenants are reasonable and enforceable. Similarly, Plaintiff has failed to establish the likelihood of success on the merits of its claims regarding the Confidentiality provision given the undisputed evidence that such information is no longer confidential. The Court also concludes that Plaintiff, on this record, has failed to establish the existence of a serious question going to the merits of any of the claims raised in the Application for Preliminary Injunction. Because Plaintiff has failed to sustain its burden of showing a likelihood of success on the merits or the existence of a serious question going to the merits, the Court need not consider the issue of irreparable injury. *See Germon*, 520 F.2d at 788.

Based on the foregoing findings and conclusions,

**IT IS ORDERED DENYING** Plaintiff's Application for Temporary Restraining Order (With Notice) and Preliminary Injunction (Doc. # 8).

DATED this 23rd day of December, 2008.

_____
James A. Teilborg
United States District Judge